U. S. PHOSPHORIC PRODUCTS CORP. v. LEONARD L. LESTER

156 So. 753.

Division B.

Opinion Filed June 19, 1934.

Petition for Rehearing Granted July 9, 1934.

On Further Petition for Rehearing, September 13, 1934.

*McKay, Withers & Ramsey* and *Jackson, Dupree & Cone* for Plaintiff in Error;

*Barber & Williams* and *D. C. McMullen,* for Defendant in Error.

BUFORD, J.—This case is before us to review a judgment in favor of the plaintiff in an action for personal injuries.

The record shows that the plaintiff was employed as a laborer in a plant where certain blocks for building purposes known as gypsum blocks were manufactured. The content, or material from which the blocks were made is in a large part a trade secret, but it is immaterial in this case.

The record shows that the blocks were molded and placed upon a conveyor which was constructed as a belt passing over rollers; that with belt No. 1 they were carried to an opening between the room where they were molded and another room of the plant. At the point of contact between the two rooms there was set up a frame on which were several idle rollers and these rollers were so placed that when the blocks came upon the rollers by the momentum created by the forward movement of the conveyor belt the direction of the movement of the block was shifted so that it went on to another like belt conveyor. The wooden rollers have no significance here. The second belt was also a conveyor for the blocks by which they were carried to the place where they were lifted from the belt by workmen and moved to another part of the building. This second belt was operated by rollers on each end which were motivated by electrical motors. The load on the belt No. 2 appears to have been usually 1000 or 1200 pounds. The rollers on which belt No. 2 operated on each end were iron drums. Each was 14 inches in diameter, about 42 inches in circum-

ference and 16 inches long. The rollers revolved rapidly. As the blocks entered upon belt No. 2 and were carried along by it to the point where they were taken from it by the laborers small particles of the blocks would chip off and fall off. These particles appeared to be of different sizes. Some of these particles would land on the belt in such manner as to pass between the belt and the roller, or drum, and these pieces of the material would stick to the drum. When pieces of the material of any considerable size became thus stuck to the drum it woud cause the belt to operate unevenly and it was, therefore, needful to keep the drum clean.

The plaintiff was instructed upon such an occasion to clean the drum. He had only been working in the plant a few days and he maintained that the defendant had provided a piece of iron about 14 inches long, 1 inch wide and one-eighth inch thick, having a loop attached to one end thereof through which the hand could be passed; that he slipped this loop over his hand grasped the piece of iron near one end and attempted to clean the roller or drum to which at that time there was a lump of the material about 4 inches long and 2 inches thick; that as he jobbed the lump of material to clean it from the drum the piece of iron stuck and as the drum revolved it drew the piece of iron between the drum and the belt and which, he having attached to his hand, drew his hand and arm between the drum and belt and thereby crushed and mangled his hand and arm for which damage he sued.

The defendant maintained that it did not furnish the piece of iron for the purpose for which it was used and that it did furnish and did instruct the plaintiff to use a piece of plank which was to be held against the roller in such fashion that the edge of the plank would clean the roller and in the

use of which there was no real or apparent danger. The alien allegation of the declaration is as follows:

"Defendant negligently failed to warn plaintiff that the substance of which said gyp blocks were made would as the result of the constant pressure of the belt so densely congeal and become so adhesive or sticky as to be difficult and dangerous to remove while the belt was running, and plaintiff did not know of such danger, nor was such danger so apparent as to cause plaintiff to know and appreciate the risk of his employment with defendant, but plaintiff alleges that defendant knew, or reasonably should have known, the danger to plaintiff of such employment and should have warned plaintiff thereof; that while plaintiff was then and there discharging his duties as such servant of the defendant, and while using said iron implement holding the same in his right hand and was with due care and diligence scraping said mud and debris then adhering to said pulley or drum, suddenly the said iron instrument or tool stuck in the lumps of mud or debris adhering to said pulley or drum, owing to the adhesiveness of the same, and before the plaintiff could remove it or withdraw his hand, the sharp or scraping end of said iron instrument or tool became caught between said belt of said section No. 2 and the lower side of the drum of said section No. 2 nearest said space in said conveyor and instantly jerked plaintiff's hand between said belt and the said pulley or drum."

The pleas were as follows:

"1.  Not guilty.

"2.  Contributory negligence.

"3.  Assumption of risk.

"4.  The defendant denies that it provided the plaintiff with the iron implement or tool described in the declaration."

The evidence as to whether or not the plaintiff was instructed to use the pieces of iron for the purpose and in the manner in which he used it is conflicting and it may be said that the jury resolved these conflicts in favor of the plaintiff; but we think that the plea of contributory negligence is sustained by the record and, therefore, all other questions raised become immaterial because when this was sustained the plaintiff was barred from any recovery.

The record shows that the plaintiff was guilty of contributory negligence by placing the loop attached to the iron around his wrist so that he could not free himself from the iron in case it should be caught between the belt and the drum and with the iron so attached to shove it into a place where anyone with ordinary intelligence would know that it might be caught between the fast revolving drum and the heavy belt. The plaintiff knew, or should have known, by the exercise of average intelligence, that when a man was jobbing, shoving or striking the substance which had become adhered to the drum there was great risk of the point of the iron slipping and the force and momentum of the blow carrying it down to a point where it would be caught between the drum and the belt.

We may feel great compassion for the man who was injured, but rules of law have been established by which the rights of men are to be measured and the fixed rule is that in a case of this sort one who is guilty of contributory negligence can not recover damages from his employer for injuries received pursuant to such contributory negligence.

It is not needful for us to go beyond this jurisdiction to find abundant authority upon which to base this statement.

In German American Lumber Co. v. Brock, 55 Fla. 577, 46 Sou. 740, we said:

"A servant in the performance of his duties is bound to

exercise ordinary care for his own safety, or that degree of care which prudent persons usually exercise under similar circumstances, and if he is injured by failure to exercise such care, the master is not liable.

"In an action against the master to recover damages for injury to the servant as a result of the master's negligence, the presumption that arises from the instincts of self preservation, and the known disposition of men to avoid injury to themselves, constitute a *prima facie* inference that the servant exercised ordinary care and was free from contributory negligence. The burden of showing contributory negligence is on the defendant.

"The doctrine of assumption of risk is distinct from that of contributory negligence, and rests upon an implied or express agreement from the circumstances of the employment, that the master shall not be liable for any injury incident to the service, resulting from a known or obvious danger arising in the performance of the service."

"Upon voluntarily accepting an employment, the servant assumes all the ordinary and usual risks and perils incident to the employment, and all risks that the servant knows or by the exercise of reasonable care and attention should know to be incident to the employment. The servant does not assume risks caused by the master's negligence, nor such as are latent and not known to the servant, nor such as are discovered only at the time of the injury, unless by the exercise of reasonable care and attention he should have discovered such risks sooner."

In Southern Turpentine Co. v. Douglass, 61 Fla. 424, 54 Sou. 385, we held:

"The doctrine of assumption of risk is distinct from that of contributory negligence, and rests upon an implied or express agreement from the circumstances of the employment,

that the master shall not be liable for any injury incident to the service resulting from a known or obvious danger arising in the performance of the service.

"Assumption of risk may be made available as a defense in actions for damages by a servant for injuries received in the course of his employment; but it is an affirmative defense and should be specially pleaded and proven by the defendant.

"A servant does not assume the risk of accident and injury due to the failure of the master to exercise reasonable care in furnishing him with a reasonably safe place to do his work, but he does assume all risks which are necessarily incident to his employment, or which are obvious or known to him.

"Subject to the rule that he does not assume risks created by reason of the master's negligence, a servant cannot recover for injuries resulting from defective or dangerous machinery or appliances, where the risks are incident to the employment, or are known, or ought to be known by him."

In Coons *et al v.* Pritchard, 69 Fla. 362, 68 Sou. 225, we said:

"An admission on the part of a minor who was injured while using a defective machine that he 'knew he should not have attempted to shift the belt in the way he did' is admissible as tending to show an appreciation by him at the time of the injury of the dangers incident to his occupation."

In Long v. Pughsley, 80 Fla. 278, 85 Sou. 664, we said:

"Where all of the dangers incident to the performance of any kind of work are so obvious, patent, open and plain to any mentally normal adult, that no information, cautions or instructions with reference thereto are necessary to be given to the adult employee doing such work to acquaint

him therewith, it is not actionable negligence if the employer fails to give such cautions, information and instructions."

See also German American Lumber Co. v. Hannah, 60 Fla. 70, 53 Sou. 561.

Having arrived at the conclusion above stated, and this not being a case coming within the purview of the hazardous occupation statute, it is unnecessary for us to discuss other questions presented.

For the reasons stated, the judgment should be reversed and it is so ordered.

Reversed.

WHITFIELD, P. J., and BROWN, J., concur.

DAVIS, C. J., and TERRELL, J., concur in the opinion and judgment.

## ON PETITION FOR REHEARING.

PER CURIAM.—Petition for rehearing has been filed in this case and, amongst other things, it is brought to our attention that in the opinion we say that the plaintiff was guilty of contributory negligence "by placing the loop attached to the iron around his wrist so he could not free himself from the iron in case it should be caught between the belt and the drum," when the evidence does not show that there was any loop attached to the piece of iron referred to and it does not show that such loop was around the plaintiff's wrist. Referring again to the record, we find that this contention is correct. We were probably misled in this conclusion by the statement of counsel at the bar of the Court and in brief stating that plaintiff in error used the iron by "first inserting his hand into a loop which had been made at the holding end of said instrument," taken in connection with the testimony of the plaintiff in error, wherein he said:

"I went down to the drum to clean it off and the iron they had there to use and knock the lumps off, when I went to knock it off it stuck in there and pulled my hand in between the belt and roller."

The natural conclusion was that if the iron pulled the hand of witness between the belt and the roller he had so inserted his hand into the loop, or half-loop, as it is called in some places in the record, in such manner that he could not turn it loose.

Having misconceived the proof made by the evidence in this regard, we feel that a rehearing should be granted and it is so ordered.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.

### ON PETITION FOR REHEARING

PER CURIAM.—In this case original opinion was filed on June 19, 1934.

Petition for rehearing was filed and granted for reasons stated in order filed July 9, 1934.

Reargument has been had and in the meantime certain exhibits have been filed, to-wit: two pieces of iron. One piece is identified as being like the piece of iron which defendant's witness testified the plaintiff used to clean the substance adhering to the iron roller referred to in the original opinion and the other piece is identified as being like the piece of iron which the plaintiff says he used.

The language used in the order for rehearing, to-wit: "We were probably misled in the conclusion by the statement of counsel at the bar of the court and in brief stating that plaintiff in error used the iron by 'first inserting his hand into a loop which had been made at the holding end of said instrument,' taken in connection with the testimony of the plaintiff in error, wherein he said: 'I went down to the

drum to clean it off and the iron they had there to use and knock the lumps off, when I went to knock it off it stuck in there and pulled my hand in between the belt and the roller'" was not intended to reflect on counsel or to intimate that counsel had in any wise misstated the record. We simply had a misapprehension of the shape of the piece of iron and of the manner in which plaintiff engaged his hand with the iron so that he could not readily release it. Instead of there being a loop attached to the end of the iron through which plaintiff passed his hand the piece of iron was so bent back at one end as to form a "U." One side of the "U" was some 2 or $2\frac{1}{2}$ inches long and the other side extended about 12 inches longer with about one-inch space between the two, or the piece of iron was so bent as to form a loop at one end. The defendant contends that the end formed a loop. That the bend only formed a "U" is the contention of the plaintiff. That it was so appears to be established by a preponderance of the evidence. Plaintiff does not contend that anyone directed him how to hold the iron, but his testimony shows that he grasped the iron in such manner as to let the long end protrude while the short end came over the back of his hand with his hand in the crotch or curve of the "U." The bend in the iron was short enough to make the iron fit snugly against his hand inside and out. We see no good reason why he should have so engaged his hand in this iron. It would evidently have been a more effective tool for the purpose for which it was used if he had so grasped it as to let the bend at the bottom of the "U" press against the palm of his hand, holding both sides of the "U" within his hand. That it is now clear that plaintiff so engaged his hand with the iron so as not to be able to release it at will by so holding the iron that his hand was snugly fitted into the curve of the "U" of the iron with the

short end thereof passing over the back of his hand, places him in no better position than he would have been had our first conception been entirely correct. The salient fact remains that he so engaged his hand with a piece of iron as not to be able to readily free himself from it and then stuck the long end of that piece of iron into a place where anyone of ordinary intelligence should know that it might get caught between a heavy metal roller and a heavy belt then in motion. His contributory negligence was not in using the iron but in so engaging his hand with the iron as not to be able to readily release the iron when it was caught between the roller and the belt.

On rehearing the original opinion, except as herein stated, is adhered to and the judgment reversing the judgment of the court below is adhered to.

Reversed.

WHITFIELD, ELLIS, and BUFORD, J. J., concur.

DAVIS, C. J., concurs in the result on rehearing.

TERRELL, J., agrees to the conclusion.

BROWN, J., not participating.